# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TOMASZ LYSIK, and<br>MONIKA RUZIK-KLATKA,<br><br>    Plaintiffs,<br><br>    vs.<br><br>CITIBANK, N.A.,<br><br>    Defendant. | Case No. 17 C 2277 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

    Tomasz Lysik and Monika Ruzik-Klatka sued their former employer, Citibank, N.A., alleging that Citibank terminated their employment after they objected to sales practices that they believed to be fraudulent and reported the practices to law enforcement. The plaintiffs assert claims against Citibank under the Consumer Financial Protection Act (CFPA), the Illinois Whistleblower Act (IWA), and Illinois common law.

    Citibank argues that Lysik and Ruzik both signed employment agreements that require arbitration of employment-related disputes. It moves to compel arbitration and dismiss the plaintiffs' action under Federal Rule of Civil Procedure 12(b)(3). The plaintiffs argue, among other things, that the arbitration agreement is unenforceable under the CFPA, which prohibits agreements that compel arbitration of claims arising under the CFPA. The Court concludes that the CFPA bars enforcement of the arbitration agreement and therefore denies Citibank's motion.

## Background

Lysik and Ruzik are former personal bankers at Citibank. A personal banker's responsibilities include marketing consumer financial products, such as bank accounts, and assisting customers with these products. As a condition of continued employment, Citibank employees must agree to the terms included in the "Citi Employee Handbook" whenever it is updated, including a term that requires employees to submit employment-related disputes to arbitration. Each signed the 2009, 2011, and 2013 Handbooks, and Ruzik, who was hired several years before Lysik, also signed the 2006 Handbook.

Plaintiffs allege that Citibank required personal bankers to impose unwanted accounts and hidden fees upon unwitting customers. Both Lysik and Ruzik say they described their concerns about the practices to supervisors, who instructed them not to raise the issue again and subsequently harassed them for their complaints. After Lysik and Ruzik filed a complaint in May 2014 with the Occupational Safety and Health Administration (OSHA), the agency responsible for investigating whistleblower claims from employees at consumer financial institutions, they were confronted by supervisors. Citibank terminated Ruzik in February 2015 and Lysik in March 2015.

## Discussion

Citibank asks the Court to dismiss plaintiffs' claims because they previously agreed to arbitrate employment-related disputes. Motions to compel arbitration and dismiss "concern venue and are brought properly under Federal Rule of Civil Procedure 12(b)(3)." *Grasty v. Colo. Tech. Univ.*, 599 F. App'x 596, 597 (7th Cir. 2015). A court ruling on a motion to compel arbitration may consider evidence beyond the pleadings. *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809-10 (7th Cir. 2011). The

2

court "constru[es] all facts and draw[s] reasonable inferences in favor of the plaintiffs." *Id.* at 806.

The Federal Arbitration Act requires a court to compel arbitration if a party can identify "a written agreement to arbitrate, a dispute within the scope of the arbitration agreement, and a refusal to arbitrate." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). Written agreements to arbitrate "shall" be enforceable, "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Plaintiffs do not dispute that an arbitration agreement exists or that their claims are within the scope of the agreement. Rather, the question before the Court is whether there are grounds that render the arbitration agreement unenforceable.

Lysik and Ruzik argue that the arbitration provision is unenforceable for three reasons: (1) the CFPA prohibits predispute arbitration requirements for claims arising under the statute; (2) the arbitration provision unfairly eliminates access to some of their potential statutory remedies; and (3) the arbitration prohibition impermissibly limits collective action.

**I.     CFPA**

Lysik and Ruzik contend that they were terminated in retaliation for the statements they made to their supervisors and OSHA about fraudulent practices they claim to have witnessed at Citibank, including what they believed to be violations of the Truth in Lending Act, the Home Ownership Equity Protection Act, and the Real Estate and Settlement Procedures Act. Retaliatory termination for objecting to or reporting a violation of any of these statutes would give rise to a dispute actionable under the employee protection provision of the CFPA. *See* 12 U.S.C. § 5567(a)(1)-(4). The

3

CFPA also provides that "no predispute arbitration agreement shall be valid or enforceable to the extent that it requires arbitration of a dispute arising under this section." *Id.* § 5567(d)(2).

Citibank argues that the CFPA does not bar arbitration of the plaintiffs' action. It contends that plaintiffs are bound by an agreement to arbitrate that predates the CFPA's prohibition against arbitration. Application of the prohibition, Citibank argues, amounts to retroactive application of the CFPA to conduct predating its effective date. This is contrary to law, Citibank argues, because the statute does not expressly provide for retroactive application and applying it to bar the preexisting arbitration requirement would improperly impose a "retroactive consequence . . . affecting substantive rights, liabilities, or duties." *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 37 (2006).

The plaintiffs contend that application of the CFPA's prohibition on arbitration is not inappropriate because the arbitration requirement is not a "substantive" right, liability, or duty that may not be impaired retroactively. Their primary contention, however, is that the applicable arbitration policy is the one in the 2013 Handbook, which postdates the CFPA, making retroactivity a non-issue.

### A. 2013 Handbook

Application of a statute is retroactive if it affects substantive rights, liabilities, or duties arising from transactions preceding the date that the statute became effective. *Fernandez-Vargas*, 548 U.S. at 37. Each of the 2006, 2009, 2011, and 2013 Handbooks contains an arbitration requirement. If, as the plaintiffs contend, the 2013 Handbook supersedes the arbitration requirements of the previous Handbooks, then there is no retroactivity issue, as the 2013 Handbook was issued after the effective date

4

of the CFPA. The Court takes up this question first. The 2013 Handbook states that it "supersedes any Employee Handbooks . . . that may have applied to [the employee] and that are inconsistent with *or* prior to this Handbook's distribution." Def.'s Ex. A-10, at 7 (emphasis added). This unambiguous language establishes that the 2006 and 2009 Handbooks, both of which predated the CFPA, were superseded when the 2013 Handbook took effect.[1]

Citibank contends that, although the 2013 Handbook may supersede prior Handbooks, it does not also supersede the arbitration requirement. This suggests that the arbitration provision is a distinct, stand-alone agreement. It is not. The Handbook describes the arbitration provision as a part of the Handbook. *Id.* ("This Handbook contains a policy that requires you and Citi to submit employment-related disputes to binding arbitration."). Moreover, the Handbook identifies Citibank's Code of Conduct as the one text that the Handbook does not supersede, which underscores that the arbitration agreement does not escape superseding effect. *Id.*

Because the 2013 Handbook superseded the earlier versions that predated the CFPA, application of the statute's arbitration prohibition does not raise a retroactivity issue. As a result, the CFPA applies to the arbitration agreement, and Citibank is not entitled to compel arbitration of the plaintiffs' claims.

**B.    Presumption against retroactivity**

Even if the 2013 Handbook did not supersede the prior versions, application of

---

[1] The language in the 2013 Handbook stating that it superseded any Handbooks that were inconsistent *or* that predated its distribution represented a change from parallel provisions in earlier Handbooks, which stated that they superseded Handbooks that were inconsistent *and* predated the new version.

the CFPA's arbitration prohibition to the prior Handbooks would not violate the presumption against retroactivity. Analysis of the retroactivity issue involves a three-step inquiry. First, the Court must ask whether Congress has expressly provided for retroactive application. If not, the Court asks whether application of the statute in the instant case would produce a retroactive consequence affecting substantive rights. If so, the Court must "apply the presumption against retroactivity by construing the statute as inapplicable to the event or act in question." If not, the presumption itself is inapplicable, and the CFPA may be applied to the prior Handbooks. *See Fernandez-Vargas*, 548 U.S. at 37-38.

The first step of the *Fernandez-Vargas* analysis requires the Court to "look to whether Congress has expressly prescribed the statute's proper reach," or, in the absence of a clear statement, to employ rules of construction to determine Congress's intent. *Id.* Neither party argues that Congress indicated that the statute should apply retroactively, and other courts that considered the question have generally reached the same answer. *See, e.g., Holmes v. Air Liquide USA LLC*, 2012 WL 267194, *6 (S.D. Tex. Jan. 30, 2012); *Pezza v. Investors Capital Corp.*, 767 F. Supp. 2d 225, 232 (D. Mass. 2011). The Court concludes that evidence does not indicate that Congress intended the statute to apply retroactively.

The second step of the *Fernandez-Vargas* analysis requires the Court to ask whether application of the CFPA to the matter would "have a retroactive consequence . . . affecting substantive rights, liabilities, or duties" based on conduct prior to the CFPA's enactment. *Fernandez-Vargas*, 548 U.S. at 37. In *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), the Supreme Court expanded on which types of consequences affect

6

substantive rights, liabilities, and duties and which do not.  Consequences affecting contractual or property rights are considered substantive.  *Id.* at 271.  By contrast, consequences "conferring or ousting jurisdiction" are not substantive, as the "application of a new jurisdictional rule usually takes away no substantive right but simply changes the tribunal that is to hear the case."  *Id.* at 274 (internal quotation marks omitted).

The Court concludes that the application of 12 U.S.C. § 5567(d)(2) to the antecedent arbitration requirement would not have an impermissibly retroactive consequence.  The choice between arbitration and judicial resolution is simply a matter of deciding what sort of tribunal hears the case, which *Landgraf* characterizes as a jurisdictional rule whose retrospective application is not impermissible.  *Id.*

Citibank offers two arguments in favor of the opposite conclusion: (1) the arbitration provision is a contractual right, which is by definition substantive, and (2) the Supreme Court's decision in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), compels enforcement of the arbitration agreement.  Neither argument is persuasive.

Citibank's first argument is that its entitlement to require disputes to be submitted to arbitration is a contractual right and that application of the CFPA's arbitration prohibition would produce a substantive consequence for this right.  Neither Citibank nor the courts that have endorsed this position have explained why the tribunal-shifting character of an arbitration provision becomes substantive for purposes of the retroactivity analysis simply by virtue of being included within a contract.  The Court agrees with the analysis of this point in *Wong v. CKX, Inc.*, 890 F. Supp. 2d 411 (S.D.N.Y. 2012), in which the court concluded that the application of a related CFPA restriction on arbitration was not impermissibly retrospective.  As the court in *Wong*

7

stated, "[t]he right to have a dispute heard in an arbitral forum is a procedural right that affects the forum that will decide the substantive rights of the parties." *Id.* at 423. *See generally Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985) ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."). An arbitration provision is ultimately nothing more than a procedural, forum-shifting term, even if it is contained in a contract. *See Grasty*, 599 F. App'x at 597 ("An arbitration clause is a type of forum-selection clause.").

Citibank's second argument is that the Supreme Court's recent arbitration decisions establish arbitration agreements as substantive rights. In *Concepcion*, the Supreme Court noted that the FAA's purpose was to "place arbitration agreements on an equal footing with other contracts," given the former "judicial hostility" to arbitration. *Concepcion*, 563 U.S. at 339. This Court's decision is consistent with *Concepcion* in that it treats the arbitration provision in the parties' agreement in exactly the same way that a court would treat a forum-selection term in a contract. Nothing in the Court's analysis singles out arbitration for disfavored treatment.

If the second step of the *Fernandez-Vargas* analysis reveals that the retrospective application of a statute would have substantive consequences, the third step is to apply the presumption against retroactivity. Because there are no such consequences in this case, the Court does not apply the presumption against retroactivity. The CFPA may be applied to the Handbooks, and because the CFPA applies, its restriction on arbitration of disputes arising under Section 5567 controls.

8

## II. Limitation of statutory remedies

Plaintiffs' second argument against enforcement of the arbitration requirement is that it impermissibly limits the remedies entitling a prevailing party to an award of attorney's fees in the CFPA and the IWA. See 12 U.S.C. § 5567(c)(4)(D)(ii); 740 ILCS 174/30. The Court need not address this point given the CFPA's invalidation of the arbitration requirement but will do so anyway to ensure a complete record in the event of appellate review. For their argument, Lysik and Ruzik rely on a provision in the 2013 Handbook stating that "[e]ach side shall pay its own legal fees and expenses." Def.'s Ex. A-10, at 60. But the Handbook also states that "arbitrator(s) may award punitive or exemplary damages or attorneys' fees where expressly provided by applicable law." Id. at 59. Thus plaintiffs' contention does not provide a basis for a determination of unenforceability.

## III. Collective action

Plaintiffs also contend that the arbitration provision is unenforceable as a restraint on their right to engage in collective action. The Court need not address this point in light of its rulings earlier in this opinion and because plaintiffs have not sought class certification or other collective status.

## Conclusion

For the reasons set forth above, the Court denies Citibank's motion to compel arbitration and dismiss. [dkt. no. 17]. The case is set for a status hearing on September

9

27, 2017 at 8:45 a.m. for the purpose of setting a discovery and pretrial schedule.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: September 20, 2017